[Civ. No. 25582.   Second Dist., Div. Two.   Apr. 2, 1962.]

FRED SCHWARTZ et al., Plaintiffs and Appellants, v. HARRY SMOOKLER et al., Defendants and Respondents.

John R. Crowe for Plaintiffs and Appellants.

Malcolm N. McCarthy and Alexis J. Perillat for Defendants and Respondents.

FOX, P. J.—This is an appeal from an order setting aside a default entered by the clerk and a default judgment rendered by the court.

The complaint was filed in January 1960. Plaintiffs sought to recover for goods sold and delivered. On June 8, 1960, the default of defendants, Harry Smookler and Jack Bulwa, a copartnership doing business under the fictitious firm name of Coast Tire and Salvage Company, was entered. On August 3 the matter was heard as a default and judgment was ordered as prayed. The formal judgment was entered on August 15. On November 28, 1960, a motion to set aside the default and judgment, accompanied by an affidavit of Malcolm N. McCarthy of San Francisco, as attorney for said defendants, and a proposed answer to the complaint, were filed.

It appears from the affidavits that this suit grows out of the sale of a large quantity of used automobile tires by the plaintiffs to the defendants who were in the business of recapping such tires. It was claimed by defendants that these used tires were not in the condition represented and not suitable for recapping. As a result of this controversy, there was a meeting in the early part of February 1960 between plaintiffs and one of the defendants in the office of the attorney for plaintiffs wherein the possibility of settlement was discussed. To that end it was agreed that they would have the tires inspected. On February 6 McCarthy wrote Lawrence Light, attorney for plaintiffs, relative to the time being kept open for defendants to plead until after said inspection and further efforts had been made by the parties to amicably settle this litigation. On February 10 Light replied, stating, *inter alia*, that if a complete settlement could not be effected, he would, if it became necessary, allow counsel for defendants a reasonable time to plead. The inspection of the tires was made on or about April 1, 1960. As a result of the report, it was decided that no adjustment would be made. As a consequence, Light, under date of April 7, requested McCarthy to file his answer as it appeared there was no chance for settlement. On May 12 Light wrote McCarthy: "We have had no reply to our letter of April 7, 1960 nor have we received any pleading in the above captioned matter. Please advise me by return mail whether you intend to plead or we will enter a default without further delay." Upon neither receiving any pleading from McCarthy nor having heard from him, Light caused the default of the defendants to be entered on June 8. He thereafter turned the matter over to an associate to arrange to have it heard as a default on August 3.

It should be noted that in the meantime an action had been filed to dissolve the partnership of the plaintiffs and R. E.

Allen, on or about March 29, was appointed receiver of the partnership assets, had duly qualified as such, and entered upon his duties.

On August 4 (the day following the default hearing) McCarthy was informed that plaintiffs had entered the default of his clients. He immediately telephoned Light who advised him that a default had been entered and that he could not stipulate to set it aside because the matter was out of his hands in that a receiver had been appointed. McCarthy also immediately telephoned the receiver but to what effect we do not know.

Upon examining his file in this matter, McCarthy discovered that at some previous date he had dictated an answer to the complaint, which had been completed with the exception of the verification, but by some oversight the answer had been returned to the file.

McCarthy took no action to have the default and the judgment vacated until on November 28 he filed notice of motion therefor, accompanied by his affidavit of merits and the proposed answer, both of which were verified by him on November 25. In his affidavit McCarthy sought to explain and excuse his failure to file the defendants' answer earlier on the grounds (1) it was inadvertently returned to the file; (2) the conversations that had taken place between some of the parties looking to an adjustment of the controversy; and (3) he had been involved in litigation in both the federal and state courts in the Bay Area since August 1960 and it had been impossible to bring this matter to the court's attention at an earlier date. Light filed an opposing affidavit, attaching copies of his letters to McCarthy dated February 10, April 7, and May 12, 1960. Upon the hearing, the court refused to set aside the default and judgment.

On December 8, 1960, McCarthy made application to renew his motion to set aside the default and judgment. He supported this motion by a new affidavit in which he stated, *inter alia,* that since the filing of his affidavit in support of his earlier motion, he had come into possession of other information which was not included in his prior affidavit because at the time he made it, he was not aware that such evidence existed. This new evidence consisted of a signed copy of a letter dated November 12, 1960, from plaintiff Fred Schwartz to Phill Silver, an attorney in Hollywood, in which Schwartz said in part: "There is a fair possibility that some basis for adjustment can be arrived at, and until all avenues of possible

adjustment are fully explored, I want this matter to remain dormant.'' This letter is apparently presented for the purpose of showing that there was still a possibility of adjusting this controversy. In his affidavit McCarthy inadvertently referred to Silver as representing the receiver. Silver, however, did not represent the receiver but rather was being asked by Schwartz to take certain action in this matter in his behalf. McCarthy also sets forth his explanation for not having acted sooner to have the default vacated after learning on August 4 that it had been entered. He says: ''At that time I was engaged in trial of a libel in admiralty in the District Court here in San Francisco which was partially tried and then continued for further trial, subject to the filing of briefs on important points of law which arose during the trial and which the court desired to be settled before continuing further. Thereafter, it was necessary that I devote practically all of my time to the preparation of such briefs in admiralty and in preparation of the second phase of that trial. As a result thereof and because of the compelling pressure of other business in my office, I neglected to promptly file a motion to set aside the default.'' McCarthy's request for permission to renew his motion was granted. Following argument, McCarthy's motion to set aside the default and judgment was granted upon condition that on or before 20 days following December 15, 1960, defendants pay to plaintiffs' attorney for plaintiffs' account the sum of $500 attorney's fees and $300 on account of costs. This portion of the order has been complied with in that the sums covering fees and costs have been tendered by defendants and such funds are now being held by plaintiffs.

The rule is firmly established that the ''granting or denying [of] a motion to vacate a default rests in the sound discretion of the trial court, and that the order will not be disturbed unless an abuse of discretion clearly appears. [Citations.] . . . But the discretion conferred is not a capricious or arbitrary one, but a discretion that is guided and controlled by fixed legal principles. [Citations.]'' (*Yarbrough* v. *Yarbrough,* 144 Cal.App.2d 610, 614 [301 P.2d 426].) It is also well settled that ''appellate courts have always been and are favorably disposed toward such action upon the part of the trial courts as will permit, rather than prevent, the adjudication of legal controversies upon their merits. [Citations.]'' (*Benjamin* v. *Dalmo Mfg. Co.,* 31 Cal.2d 523, 525 [190 P.2d 593].)

''The burden of showing that the default was entered

through mistake, inadvertence, surprise or excusable neglect is on the moving party, and in the absence of such a showing a default may not be set aside.'' (*Yarbrough* v. *Yarbrough, supra.*)

Also, section 473, Code of Civil Procedure, provides that application for relief thereunder ''must be made *within a reasonable time,* in no case exceeding six months. . . .'' (Emphasis added.) ■■ This time requirement is discussed in *Smith* v. *Pelton Water Wheel Co.,* 151 Cal. 394 [90 P. 934] (p. 397) : ''The six months' limitation there provided is simply a limitation upon the power of the court to grant any relief, regardless of any question either as to the merits of the application, or as to whether or not the application was made within what might be held to be a reasonable time under the circumstances. ■■ Under this statute, in addition to being made within the six months' period, the application must be made within 'a reasonable time,' and what is a reasonable time in any case depends upon the circumstances of that particular case.''

■■ Applying these principles to the factual picture disclosed by this record, it is clear that defendants did not take steps to set aside their default within a reasonable time as required by the statute and that no adequate excuse for such delay was presented.

It will be recalled that McCarthy learned on August 4 that his clients' default had been entered. He verified this information by a telephone call to counsel representing plaintiffs who advised him that he could not stipulate to setting aside the default since a receiver had been appointed. McCarthy then telephoned the receiver. It was apparently as a result of this incident that McCarthy discovered that the answer which he had dictated and which had been completed except for the verification had inadvertently been returned to the file instead of being served and filed. He does not appear to have taken any steps whatever toward setting aside the default from the 4th of August until he filed his notice of motion with supporting documents on November 28, a period of more than three and one half months. Bearing in mind that the answer had already been prepared, the preparation of his affidavit of approximately two pages and his notice of motion of one page, citing a single authority, Code of Civil Procedure section 473, was certainly not a time consuming undertaking. It is obvious that filing the notice of motion (and supporting papers) to set aside the default and judgment on November

was not making application for relief within a reasonable time after learning on August 4 that default of defendants had been entered. (*Benjamin* v. *Dalmo Mfg. Co., supra.*) In the case last cited, a delay of something over three months in initiating proceedings to set aside a default judgment after entry thereof was held to be not within a reasonable time. On this point the court stated (p. 529): "Defendant has not cited, nor has independent research disclosed, any case in which a court has set aside a default where, in making application therefor, there has been an unexplained delay of anything approaching three months after full knowledge of the entry of default. On the contrary, the proper procedure appears to involve the presentation of some explanation, by affidavit or testimony, of any extended delay, and the court then determines whether such explanation may be deemed sufficient to justify the granting of the relief sought. Illustrative of this procedure is the case of *Smith* v. *Pelton Water Wheel Co., supra,* 151 Cal. 394, where, in contrast to the situation here, an explanation was made in the trial court but the excuse—the illness of the attorney 'for over two months after learning of the default' and the pressure of 'other business' for several weeks thereafter—was deemed insufficient by the trial court. In affirming this ruling on the basis of the showing made in relation to the 'reasonable time' requirement of the statute, this court pertinently observed at page 398: 'The delay of nearly four months in the matter of making the application, *after full knowledge of the facts,* accompanied by the failure to give any intimation to the opposing party of an intention to so apply, *certainly required some satisfactory explanation* to warrant a conclusion that the application was made within a reasonable time.''

In the case at bench, no satisfactory explanation was given to justify a delay of more than three and one half months in initiating proceedings to set aside defendants' default. Defendants' attempt to explain their delay on the theory that there was still a possibility of a settlement is a synthetic argument. There is no showing that there had been any negotiations or even conversations between the parties looking to that end after counsel had knowledge that the default had been entered, nor is there any suggestion that there had been any such conversations between either defendants or their counsel and the receiver. The letter from Fred Schwartz to Attorney Phill Silver, dated November 12, 1960, is without significance in explaining counsel's delay. In counsel's affi-

davit, dated December 7, in support of his application to renew his motion to set aside the defendants' default and the judgment, counsel explains that reference to the Schwartz-Silver letter was not included in his prior affidavit, dated November 25, because he did not then know of its existence. Furthermore, since a receiver had been appointed and had qualified and was authorized by the court to proceed with this litigation, he was the proper person to contact with respect to any possible settlement or adjustment of defendants' claim. The Schwartz letter, however, was not directed to the receiver.

The only other explanation offered by counsel for his delay in presenting his motion to set aside the default was that because of the "pressure of other business in my office, I neglected to promptly file [such motion]." This is not a sufficient legal justification for a delay of more than three and one half months. (*Willett* v. *Schmeister Mfg. Co.*, 80 Cal.App. 337 [251 P. 932]; *Lyons* v. *Swope*, 154 Cal.App.2d 598 [317 P.2d 121].) In the *Willett* case, the court stated (p. 340): "Nor is unusual press[ure] of business a legal excuse. To accept this as a legal justification for the failure to comply with the statute would be to discourage diligence in the prosecution of appeals and establish a precedent that might lead to vexatious delays."

In view of the provisions of the statute and the foregoing authorities, we must conclude that counsel for defendants did not take steps "within a reasonable time" to set aside their default and the judgment and that he did not make any "satisfactory explanation" which, under the law, is sufficient to justify or excuse his delay. It follows that the trial court abused its discretion in granting defense counsel's renewed motion for there is in the record no evidence sufficient to justify an order setting aside the default and judgment in this case. To hold otherwise—that in the absence of a satisfactory explanation, a delay of more than three and one half months in undertaking to open a default can be excused—would empower the trial court to dispense with the "reasonable time" requirement of the statute. (*Benjamin* v. *Dalmo Mfg. Co., supra,* p. 532.)

There is no merit in defendants' contention that the receiver is not properly before the court. By proceedings to augment the record, it appears that on April 17, 1961, the Superior Court made an order authorizing the receiver to prosecute this appeal.

Plaintiffs have appealed from (1) the order granting

application for renewal of the motion to set aside the default and the default judgment, and (2) the order setting aside the default and default judgment. The first order is reviewable on the appeal from the second order and is therefore not an appealable order as such, hence the purported appeal therefrom must be dismissed.

The purported appeal from the order granting application for renewal of motion to set aside default and default judgment is dismissed. The order setting aside default and default judgment is reversed.

Ashburn, J., and Herndon, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied May 29, 1962. Peters, J., was of the opinion that the petition should be granted.