[No. F010047. Fifth Dist. Nov. 21, 1988.]

CITY OF FRESNO, Petitioner, v.
THE SUPERIOR COURT OF FRESNO COUNTY, Respondent;
WILLIAM GREEN, Real Party in Interest.

**COUNSEL**

Marderosian & Swanson and Michael G. Marderosian for Petitioner.

No appearance for Respondent.

James E. Parks for Real Party in Interest.

**OPINION**

**WOOLPERT, Acting P. J.**—Petitioner City of Fresno seeks mandamus relief from an order of respondent court compelling production of documents under Code of Civil Procedure section 2031.[1] In the underlying action, Green v. City of Fresno et al. (Super. Ct. Fresno County, 1987, No. 291956-1), the plaintiff allegedly suffered injuries due to excessive force used by certain defendant Fresno police officers when arresting him. Among the documents Green sought to inspect were the personnel files of the officers involved in the arrest. Those files were maintained by defendant Fresno Police Department.

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise indicated.

Section 2031 provides in relevant part: "Any party may obtain discovery within the scope delimited by Section 2017, and subject to the restrictions set forth in Section 2019, by inspecting documents, tangible things, and land or other property that are in the possession, custody, or control of any other party to the action.

"(1) A party may demand that any other party produce and permit the party making the demand, or someone acting on that party's behalf, to inspect and to copy a document that is in the possession, custody, or control of the party on whom the demand is made. . . .

" . . . . . . . . . . . . . . . . . . .

"(h) Within 20 days after service of an inspection demand, the party to whom the demand is directed shall serve the original of the response to it on the party making the demand, . . .

" . . . . . . . . . . . . . . . . . . .

"(k) If a party to whom an inspection demand has been directed fails to serve a timely response to it, that party waives any objection to the demand, including one based on privilege or on the protection for work product under Section 2018. However, the court, on motion, may relieve that party from this waiver on its determination that (1) the party has subsequently served a response that is in substantial compliance with subdivision (f), and (2) the party's failure to serve a timely response was the result of mistake, inadvertence, or excusable neglect. . . ."

Petitioner claims respondent court abused its discretion by not granting relief under section 2031, subdivision (k), excusing petitioner's failure to serve a timely response to the demand for production of those documents. However, the more critical issue is whether the requirements of Penal Code section 832.7 and Evidence Code sections 1043, 1045, and 1046 relating to a *Pitchess*[2] motion can be satisfied by the use of a section 2031, subdivision (k), motion. If not, respondent court should have granted only limited discovery. On review, we conclude respondent did not abuse its discretion by denying relief for mistake or inadvertence. Nevertheless, we conclude respondent court erred in granting discovery of those documents which properly should have been the subject of a *Pitchess* motion.

### STATEMENT OF THE CASE AND FACTS

On November 6, 1987, James Parks, counsel for Green, served a demand for inspection of documents on Michael Marderosian, counsel for petitioner. According to the demand, petitioner was supposed to produce certain identified documents for inspection and copying on December 14, 1987. On December 11, 1987, Marderosian wrote Parks a letter including the following: "Lastly, my response to your client's first request for production of documents is due on December 14, 1987. In this regard, I would appreciate an extension up to and including December 31, 1987. I will assume that you have agreed to this extension unless I hear something to the contrary from you."

On December 23, Parks sent the following reply: "With respect to your response to my Request for Production of Documents, I will grant you an extension of time up to and including January 13, 1988 for you to provide the documents requested. Your failure to respond to the request in a timely fashion constitutes a waiver of any objection to the demand under C.C.P. Section 2031."

Counsel for petitioner eventually served by hand delivery a response to the demand. In his response, petitioner objected to 12 of the 19 items sought. Thereafter, Green filed a noticed motion with respondent court for an order requiring petitioner's compliance with the demand for inspection. Pursuant to section 2031, subdivisions (h) and (k), he argued petitioner had waived its right to object to the demand on any grounds. According to Green, petitioner failed to respond to the demand within 25 days of when it was served (20 days plus 5 days for service by mail). Petitioner countered it had filed a timely response in light of the three extensions to which Parks had agreed.

---

[2] *Pitchess* v. *Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305].

During hearing on the motion, petitioner made an oral motion for relief under section 2031, subdivision (k), arguing due to inadvertence or mistake Marderosian believed his response was not due until the date set for production. Respondent court in turn continued the matter for further declarations and briefing on the issue of mistake.

In supplemental points and authorities, petitioner urged its counsel was mistaken as to the time requirement for a response under section 2031, subdivision (h), and confused by the demand's reference to December 14. In his declaration, Marderosian speculated his confusion might have been due to his involvement in a trial between December 14, 1987, and January 21, 1988. Green replied mistake of law and the ordinary press of business were insufficient grounds for the court to grant relief under section 2031, subdivision (k).

Respondent court agreed with Green. The court found petitioner waived all objections to the demand by its inexcusable failure to respond to the demand within the 20-day requirement of section 2031, subdivision (h).

DISCUSSION

I. *Preliminary Matters*

Green raises preliminary questions which we will address before reaching the substantive issues. ■■■ First, he suggests this court should not review the discovery order because such supervision of law and motion matters would be overwhelming to an appellate court, and could be disruptive of trial court proceedings. He goes on to cite these reasons as the basis for a general rule precluding writ review of discovery orders. ■■■ However, writ review is appropriate where discovery is granted over a claim of privilege and the order raises, as in this case, a question of first impression. (*Roberts* v. *Superior Court* (1973) 9 Cal.3d 330, 336 [107 Cal.Rptr. 309, 508 P.2d 309]; *Long Beach* v. *Superior Court* (1976) 64 Cal.App.3d 65, 69 [134 Cal.Rptr. 468].)

■■■ In addition, Green attacks petitioner's claim that writ review is necessary to prevent irreparable harm. According to him, this argument is inconsistent with the conditional nature of the privilege afforded official information acquired in confidence (Evid. Code, § 1040). Yet, Green ignores the fact that the documents which the trial court ordered discoverable may cause the officers involved or the department unnecessary annoyance, embarrassment or oppression, all of which could be prevented by writ review. (See Evid. Code, § 1045, subd. (d); cf. *Procunier* v. *Superior Court* (1973) 35 Cal.App.3d 211 [110 Cal.Rptr. 531] (disapproved on another

point in *Shepherd* v. *Superior Court* (1976) 17 Cal.3d 107, 124 [130 Cal.Rptr. 257, 550 P.2d 161]).) Thus, review before court-ordered production is appropriate in this case.

## II. *Excusable Neglect?*

Of the 12 items in the demand to which petitioner objected, it raised objections to 6 of them on non-*Pitchess* motion grounds (Nos. 1, 11, 13, 15-17). Those six items, and petitioner's objections to each, were as follows: "1. Copies of all statements and/or interview notes of witnesses, the plaintiff, police officers, medical personnel, or other persons regarding the incident which occurred on March 27, 1982 which gave rise to this lawsuit;"

"RESPONSE TO REQUEST NO. 1: Objection. The request seeks information which is protected from disclosure by the Attorney Work Product Privilege. *Brown v. Superior Court* (1963) 218 Cal.App.2d 430."

"11. All documents concerning individuals who were arrested by the police officers listed in the narrative report prepared by Officer G.W. Taylor on or about March 27, 1982 or March 28, 1982 while in the course of their employment as Fresno police officers."

"RESPONSE TO REQUEST NO. 11: All criminal history reports on the plaintiff have already been produced. Defendant objects to the production of information regarding any other individual arrested on the grounds that such request is overly broad and remote and, as such, is not calculated to lead to the discovery of information relevant to the subject matter of this action nor to the discovery of admissible evidence. *CBS v. Superior Court* (1968) 263 Cal.App.2d 12. Defendants further object that production of information on individuals arrested other than the plaintiff would violate their rights of privacy."

"13. All documents concerning any applications for criminal complaints and all documents concerning criminal complaints from March, 1977 against the police officers listed in the narrative report prepared by Officer G.W. Taylor on or about March 27, 1982 or March 28, 1982."

"RESPONSE TO REQUEST NO. 13: Objection. This request asks for information which is privileged under the provisions of Evidence Code § 1045."

"15. All training materials including, but not limited to, policy manuals, training manuals, handouts, outlines, films, and other documents which have been used in the training of the police officers listed in the narrative

report prepared by Officer G.W. Taylor on or about March 27, 1982 or March 28, 1982 from their initial training at the academy to the present."

"RESPONSE TO REQUEST NO. 15: Objection. This request asks for information which is privileged under the provisions of Evidence Code § 1040(b)(2)."

"16. Copies of any municipal or police department regulations regarding arrests of civilians."

"RESPONSE TO REQUEST NO. 16: Objection. This request asks for information which is privileged under the provisions of Evidence Code § 1040(b)(2)."

"17. Copies of general orders or policy statements issued by the Fresno police department regarding arrests."

"RESPONSE TO REQUEST NO. 17: Objection. This request asks for information which is privileged under the provisions of Evidence Code § 1040(b)(2)."

While neither party addressed this point, there should be no dispute that these six items could rightfully be the subject of a section 2031 demand for production. They did not fall within the subject matter of a *Pitchess* motion, i.e., peace officer personnel records and citizens' complaints against the personnel of a department or agency which employs peace officers. (Pen. Code, §§ 832.7 & 832.5.) Thus, as to items Nos. 1, 11, 13 and 15-17, the question is whether respondent court abused its discretion by not granting relief under section 2031, subdivision (k).

■ Petitioner contends the court erred because the petitioner's attorney was obviously "functioning under a mistake due to inadvertance [*sic*]." As supporting evidence, petitioner relies on counsel's misinterpretation of the date set forth on the face of the demand and his then involvement in preparing for a lengthy trial. According to the attorney's declaration, his preparation for the trial which began shortly after receiving the demand prevented him from taking the time to read section 2031 thoroughly before responding to the demand.

As previously noted, the trial court may relieve a party from the consequences of its failure to serve a timely response if the court finds, in relevant part, the failure was the result of mistake, inadvertence or excusable neglect. (§ 2031, subd. (k).) Given the recent enactment of section 2031 as part of

the Civil Discovery Act of 1986, there is no case law interpreting the meaning of mistake, inadvertence or excusable neglect.

However, there is a reference in the legislative history to this standard for relief. The discovery act was the product of the State Bar-Judicial Council Joint Commission on Discovery. In the reporter's notes on the joint commission's efforts, the following was written with regard to the relief provision: "The subdivision then brings over from CCP § 473 the court's power to relieve one from that waiver under the circumstances set forth in the proposed subdivision. It is the intent of the Commission that henceforth this subdivision, and not CCP § 473, will apply to this form of discovery default." (State Bar-Judicial Council J. Com. on Discovery (1986) Proposed Cal. Civil Discovery Act of 1986, p. 83.)

The Legislature apparently intended to employ the same standard for relief from defaults as used in section 473 for failure to serve a timely response to a discovery demand. Consistent with the cases interpreting mistake, inadvertence or excusable neglect in section 473, respondent court did not abuse its discretion. Counsel's mistake of law on a relatively simple and undebatable matter was not a valid ground for relief. (*City of Ontario* v. *Superior Court* (1970) 2 Cal.3d 335, 347 [85 Cal.Rptr. 149, 466 P.2d 693].) Further, the press of an attorney's practice would not warrant relief. (*Lyons* v. *Swope* (1957) 154 Cal.App.2d 598, 600 [317 P.2d 121].)

As the judge observed in denying petitioner's motion for relief: "[I]f we are going to simply find that being busy, or not fully understanding the provisions of a code section, or whatever it is, constitutes excusable neglect, why, you know, we just don't have any rules."

III. *Effect of Pitchess Motion Statutory Provisions*

Of a different category are the following six inspection demands to which petitioner objected: "6. The complete personnel files maintained by the Fresno Police Department of each officer whose name appears in the narrative report prepared by Officer G.W. Taylor on or about March 27, 1982 or March 28, 1982.

"RESPONSE TO REQUEST NO. 6: Objection. This request calls for information which is privileged under the provisions of Penal Code § 832.7; Penal Code 832.8; and Evidence Code § 1043."

"7. All documents concerning every complaint against any person charged with assault and battery upon any police officer whose name

appears in the narrative report prepared by Officer G.W. Taylor on or about March 27, 1982 or March 28, 1982."

"RESPONSE TO REQUEST NO. 7: Objection. This request calls for information which is privileged under Evidence Code § 1045; Penal Code § 832.7 and Penal Code § 832.8."

"8. All documents relating to any complaints of excessive force against any of the police officers listed in the narrative report prepared by Officer G.W. Taylor on or about March 27, 1982 or March 28, 1982. Please provide documents from March, 1977 to the present."

"RESPONSE TO REQUEST NO. 8: Objection. This request calls for information which is privileged under Evidence Code § 1045; Penal Code § 832.7 and Penal Code § 832.8."

"9. All performance evaluations and any other similar documents concerning the police officers listed in the narrative report prepared by Officer G.W. Taylor on or about March 27, 1982 or March 28, 1982. Please provide documents from March, 1977 to the present."

"RESPONSE TO REQUEST NO. 9: Objection. This request calls for information which is privileged under the provisions of Penal Code § 832.7; Penal Code § 832.8; and Evidence Code § 1040."

"12. All documents regarding the use of force by the police officers listed in the narrative report prepared by Officer G.W. Taylor on or about March 27, 1982 or March 28, 1982 from the dates of their employment to the present. This includes, but is not limited to, use of firearm, police baton, flashlight, fists, feet, and chemical mace."

"RESPONSE TO REQUEST NO. 12: Objection. The request is overly broad and remote and, as such, is not calculated to lead to the discovery of information relevant to the subject matter of this action nor to the discovery of admissible evidence. In addition, an objection is made because the question is vague and ambiguous so as to make a response impossible without speculation as to the meaning of the question. In addition, an objection is made on the grounds that the information requested is privileged under Penal Code § 832.7; Penal Code 832.8; and Evidence Code § 1045."

"14. Any documents from the internal affairs division of the Fresno police department regarding the police officers listed in the narrative report prepared by Officer G.W. Taylor on or about March 27, 1982 to March 28,

1982 from the dates of their employment as Fresno police officers to the present."

"RESPONSE TO REQUEST NO. 14: Objection. This request asks for information which is privileged under the provisions of Evidence Code § 1045; Evidence Code § 1043; Evidence Code § 1040; Penal Code § 832.7; and Penal Code § 832.8."

The sections relating to the statutory *Pitchess* motion provide in relevant part: "Peace officer personnel records and records maintained pursuant to Section 832.5 [citizen complaint] or information obtained from these records, are confidential and shall not be disclosed in any criminal or civil proceeding except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code." (Pen. Code, § 832.7.)

"(a) In any case in which discovery or disclosure is sought of peace officer personnel records or records maintained pursuant to Section 832.5 of the Penal Code or information from such records, the party seeking such discovery or disclosure shall file a written motion with the appropriate court or administrative body upon 10 days' written notice to the governmental agency which has custody and control of such records. Upon receipt of such notice the governmental agency served shall immediately notify the individual whose records are sought.

"(b) Such motion shall include:

"(1) Identification of the proceeding in which discovery or disclosure is sought, the party seeking discovery or disclosure, the peace officer whose records are sought, the governmental agency which has custody and control of such records, and the time and place at which the motion for discovery or disclosure shall be heard;

"(2) A description of the type of records or information sought; and

"(3) Affidavits showing good cause for the discovery or disclosure sought, setting forth the materiality thereof to the subject matter involved in the pending litigation and stating upon reasonable belief that such governmental agency identified has such records or information from such records.

"(c) No hearing upon a motion for discovery or disclosure shall be held without full compliance with the notice provisions of this section except upon a showing by the moving party of good cause for noncompliance, or upon a waiver of such hearing by the governmental agency identified as having such records." (Evid. Code, § 1043.)

"In any case, otherwise authorized by law, in which the party seeking disclosure is alleging excessive force by a peace officer in connection with the arrest of that party, the motion shall include a copy of the police report setting forth the circumstances under which the party was stopped and arrested." (Evid. Code, § 1046.)

Assuming no excuse for petitioner's noncompliance with the section 2031, subdivision (h), 20-day time requirement for filing responses, the waiver of privileges in subdivision (k) of that section would ordinarily apply. Petitioner nevertheless argues the *Pitchess* motion procedure is the sole means to obtain this discovery. It would follow, then, that petitioner has not as yet waived the protection afforded by Penal Code section 832.7 and Evidence Code sections 1043 and 1046. We agree.

### A. *Reviewability*

■ Green argues the propriety of the *Pitchess* motion procedure is not a proper subject for this court's review. According to him, petitioner did not raise the issue in the respondent court.

Petitioner made the appropriate objections in its response to the demand for production. Counsel for petitioner also argued the need for a *Pitchess* in-camera inspection and compliance with the Evidence Code at both hearings on the discovery motion. Further, it is difficult to imagine what more petitioner could do in arguing Green's noncompliance, considering respondent court's position on the matter. Granting relief from petitioner's default was the only vehicle by which the court thought it could deny the motion to compel.

Thus, petitioner may be heard on this issue.

### B. *Substantial Compliance*

■ Citing *Dominguez* v. *Superior Court* (1980) 101 Cal.App.3d 6, 10 [161 Cal.Rptr. 407], Green argues his section 2031 demand substantially complied with the Evidence Code section 1043 procedure and thus the trial court did not err. We disagree.

In *Dominguez,* plaintiffs in a wrongful death action moved under section 2034 to compel the City of San Gabriel to produce documents, including a police officer's personnel file and citizens' complaints regarding the officer's conduct. The city had not only failed to produce the documents but also questioned their existence. It opposed the motion on grounds the documents were privileged and could only be sought by an Evidence Code

section 1043 motion. Before denying the motion to produce, the trial court commented: " 'I don't question the relevancy of these records; it's a question of public policy, disclosing them is really the thing before the court.' " (101 Cal.App.3d at p.10.)

The Court of Appeal initially denied a mandamus petition for review of the order. However, the Supreme Court granted hearing and retransferred the matter to the appellate court with instructions to reconsider the petition in light of *Shepherd* v. *Superior Court, supra,* 17 Cal.3d 107 [130 Cal.Rptr. 257, 550 P.2d 161], and Evidence Code section 1043. *Shepherd* describes in some detail the balancing process necessary under Evidence Code section 1040, subdivision (b)(2), for a trial court to withhold disclosure of documents "acquired in confidence," and thus subject to a conditional privilege, on grounds disclosure would be "against the public interest." (17 Cal.3d at pp. 125-128.)

Quoting extensively from the discussion in *Shepherd,* the *Dominguez* court found the trial court improperly applied the balancing test and directed it to undertake further proceedings. (*Dominguez, supra,* 101 Cal.App.3d at pp. 11-13.) However, the *Dominguez* court also made the following observation which Green now quotes: "A close reading of sections 1043 of the Evidence Code and 2034 of the Code of Civil Procedure shows that none of the substantive or procedural provisions of section 1043 of the Evidence Code were impaired by the written notice duly given under Code of Civil Procedure section 2034 and that irrespective of how petitioners' motion at bench was entitled, City suffered scarcely any literal impairment and no substantial impairment of its rights." (*Dominguez, supra,* at p. 10.)

The language in *Dominguez* is difficult to fathom. Presumably, the city had argued plaintiffs were not entitled to relief because the notice requirement under section 2034 somehow impaired the city's rights under Evidence Code section 1043. The city conceivably claimed section 2034 afforded insufficient notice to the governmental agency which had custody and control of the records sought. However, the *Dominguez* court does little to explain the city's asserted impairment of rights. Similarly, the court sheds little light on its rationale for finding no impairment. Thus, the value of this quoted language is difficult to assess.

Further, Green is mixing the proverbial apples with oranges when he cites *Dominguez* as authority for his claim of substantial compliance. The quoted language from *Dominguez* refers to a motion to compel production, not an initial demand for production. More importantly, a section 2031 demand for production does not satisfy many of the requirements of a *Pitchess* motion.

The statutory *Pitchess* motion requirements which a section 2031 demand does not satisfy include: 10 days' written notice to the governmental agency which has custody and control of such records (Evid. Code, § 1043, subd. (a)); identification of the peace officer whose records are sought and the governmental agency which has custody and control of the records (Evid. Code, § 1043, subd. (b)(1)); affidavits showing good cause for the discovery or disclosure sought, setting forth the materiality thereof to the subject matter involved in the pending litigation and stating upon reasonable belief that the identified governmental agency has such records or information from such records (Evid. Code, § 1043, subd. (b)(3)); and a copy of the police report setting forth the circumstances under which the party was stopped and arrested (Evid. Code, § 1046).

Also of probable significance to an officer whose records are sought is the fact that Evidence Code sections alone assure the officer of both notice of the potential disclosure (§ 1043, subd. (a)), and the right to move for a protective order (§ 1045, subd. (d)). These provisions not only assure the officer of due process, they also protect the officer from neglect on the part of his or her employer.

Green claims the materiality of the records was self-evident in his case, considering the manner in which he was injured and the extent of his injuries. However, section 2031 requires no such evidence to support a demand for production.

Furthermore, the trial court may not grant discovery on a *Pitchess* motion without examining the information in chambers to determine relevance based on criteria set forth in Evidence Code section 1045, subdivisions (b)-(d). In camera inspection of documents is certainly not an attribute of a section 2031 demand for production.

The significant difference between the two forms of discovery is apparent in the distinctions discussed above. Implicit in section 2031 is a civil litigant's ability to obtain wide-ranging discovery without first seeking court approval. The section places the burden upon the responding party to object or seek a protective order if limits on such discovery are desired. By contrast, Penal Code section 832.7 and Evidence Code section 1043 et seq., characterize peace officer personnel records, citizen complaints concerning an officer's performance and reports relating to such complaints, as confidential. These sections also require prior court approval before such documents may be released for discovery purposes. Clearly, the burden shifts in these sections to the party seeking the documents to show good cause for discovery.

Thus, in light of these distinctions, it cannot be said Green's section 2031 demand for production substantially complied with the statutory requirements for a *Pitchess* motion. Accordingly, the question remains whether petitioner's failure to serve a timely response to the demand constituted a waiver of real party's noncompliance with Penal Code section 832.7 and Evidence Code section 1043 et seq.

## C. *Priority of Statutory Pitchess Motion*

Petitioner argues the *Pitchess* motion provisions are specific rules for the production of peace officer records and therefore take priority over the waiver language in section 2031, which is a general provision for production of documents. Green reaches the opposite conclusion by relying on the plain meaning of the words "waives any objection" in section 2031, subdivision (k), along with the Legislature's purposeful decision to include a waiver provision for untimely objections based on privilege.

In construing statutes, we are mandated to pursue the legislative intent if possible. (§ 1859.) Here, respondent court noted it was influenced by the legislative history to the new discovery act in ordering discovery. The court observed that while under one version of the legislation a party's failure to serve a timely objection did not waive objections based on privilege, the Legislature amended the language so that any objection, including one based on privilege, was waived. While the court's description of the section 2031, subdivision (k), legislative history is accurate, that history is not dispositive here.

The confidentiality afforded peace officer records under Penal Code section 832.7 is unlike other privileges outlined in the Evidence Code. (Evid. Code, § 930 et seq.) With the others, the holder of a privilege must claim the appropriate privilege in order to refuse to disclose and prevent another from disclosing a confidential communication (e.g., Evid. Code, §§ 954, 970, 980, 994, 1014, 1033, 1034, 1035.8, 1037.4). If there is a basis for the claim of privilege, it is up to the party seeking discovery of the confidential communication to show the applicability of an exception to the privilege. Yet, in the case of peace officer records, the burden from the outset is upon the party seeking disclosure to show good cause for discovery.

Since in the case of the other privileges the holder must actively claim the privilege to prevent disclosure, it is not unreasonable to equate the holder's failure to timely claim the privilege with a waiver. On the other hand, it would be unreasonable to require the custodian of peace officer personnel records and the records maintained pursuant to Penal Code section 832.5 to

timely claim the privilege or waive it. Neither the relevant Penal Code nor Evidence Code provisions require any action on the custodian's part except to immediately notify the individuals whose records are sought. Instead, they place the burden upon the party seeking disclosure to follow a certain procedure which includes making a good-cause showing for discovery.

Notably, there is waiver language in Evidence Code section 1043, subdivision (c). However, the provision does not support Green's claim that petitioner must claim the right to a statutory *Pitchess* motion in a particular manner or waive it. The language of Evidence Code section 1043, subdivision (c), is inartfully written with regard to *waiver*. It literally provides: no hearing upon a *Pitchess* motion shall be held without full compliance with the notice provision of section 1043 except upon a waiver of such hearing by the governmental agency identified as having such records.

It is clear from the legislative history that the waiver language was added "to permit the governmental agency to waive the hearing on the motion if it so desires." (Assem. Com. on Crim. J., Rep. on Sen. Bill No. 1436—Discovery of Police Personnel Records (Aug. 28, 1978).) Accordingly, it would be unreasonable to read the language of Evidence Code section 1043, subdivision (c), regarding waiver of a *hearing,* so as to place the burden on the governmental agency to request the statutory *Pitchess* procedure in the first place.

In arguing the governmental privilege must be asserted to entitle petitioner to the benefits of Evidence Code section 1043 et seq., real party also cites *Long* v. *Municipal Court* (1976) 58 Cal.App.3d 382, 386 [128 Cal.Rptr. 918]. Real party relies on *Long* for the proposition it would have been improper for respondent court to require an in camera proceeding when the official records privilege under Evidence Code section 1040[3] was not asserted (because there was no timely response). Once again, however, real party is confusing matters.

---

[3] Evidence Code section 1040 provides in relevant part: "(a) As used in this section, 'official information' means information acquired in confidence by a public employee in the course of his or her duty and not open, or officially disclosed, to the public prior to the time the claim of privilege is made.

"(b) A public entity has a privilege to refuse to disclose official information, and to prevent another from disclosing official information, if the privilege is claimed by a person authorized by the public entity to do so and:

". . . . . . . . . . . . . . . . .

"(2) Disclosure of the information is against the public interest because there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice; but no privilege may be claimed under this paragraph if any person authorized to do so has consented that the information be disclosed in the proceeding. In determining whether disclosure of the information is against the public interest, the interest of the public entity as a party in the outcome of the proceeding may not be considered."

To begin, *Long* preceded the enactment of Penal Code section 832.7 and Evidence Code section 1043 et seq. The chronology is important because at the time of *Long,* a governmental agency was in the same position as a holder of any other privilege. To avoid disclosure, the governmental agency had to establish the applicability of the conditional privilege under Evidence Code section 1040, subdivision (b)(2), by arguing disclosure would be against the public interest.

To better understand *Long* and the present situation, we turn to the *Pitchess* opinion and the response it aroused. In *Pitchess* v. *Superior Court, supra,* 11 Cal.3d 531, the defendant charged with battery against sheriff's deputies moved for production of files concerning certain internal affairs investigations by the sheriff's department. The trial court granted the motion and ordered the prosecution to secure the records from the sheriff. The sheriff's department refused to cooperate, ultimately resulting in mandamus proceedings before the state Supreme Court. The sheriff sought relief on two grounds: (1) the affidavits were allegedly insufficient to justify discovery because they failed to demonstrate good cause; and (2) when the public interest required, there was a common law privilege preventing the disclosure of governmental information.

The Supreme Court disagreed with the sheriff on both theories. First, the court held an accused in a criminal prosecution may compel discovery by demonstrating the requested information would facilitate the ascertainment of the facts and a fair trial. (*Pitchess, supra,* 11 Cal.3d at p. 536.) Second, the court ruled there was no common law privilege of confidentiality. Evidence Code section 1040 represented the exclusive means by which a public entity could assert a claim of governmental privilege based on the necessity for secrecy. (*Id.* at pp. 539-540.)

In the aftermath of *Pitchess,* there were reportedly incidents of law enforcement shredding records to prevent discovery. Penal Code sections 832.7 and 832.8 and Evidence Code sections 1043, 1045 and 1046 represented the Legislature's attempt to respond to *Pitchess* and law enforcement's alleged reaction. Interestingly, an early Senate Judiciary Committee report on Senate Bill No. 1436, the bill creating these sections, described the bill's purpose as being "to protect peace officer personnel records from discovery in civil or criminal proceedings." (Sen. Com. on Judiciary, Rep. on Sen. Bill No. 1436 as amended Apr. 3, 1978.) Penal Code section 832.7 made such records confidential. Evidence Code section 1043 required special notice to the custodian of such information and affidavits evidencing good cause for discovery. Finally, Evidence Code section 1045 established a procedure for in camera inspection to determine materiality.

With Penal Code section 832.7 and Evidence Code section 1043 et seq., the Legislature created a wholly different procedure for a particular subgroup of "official information." ■ While the privilege attaching to "official information" clearly encompasses internal affairs files (*Pitchess* v. *Superior Court, supra,* 11 Cal.3d at p. 539), the governmental agency need not claim the privilege to obtain the benefit of in camera review. The " 'formal privilege to refuse to divulge official information when the need to maintain its secrecy is greater than the need for disclosure in the interests of justice' " (*People* v. *Memro* (1985) 38 Cal.3d 658, 689 [214 Cal.Rptr. 832, 700 P.2d 446], quoting *Pitchess, supra,* 11 Cal.3d at p. 538, fn. omitted) comes into play *only* after a sufficient showing has been made to justify discovery. (*People* v. *Memro, supra,* 38 Cal.3d at p. 689.)

■ Moreover, the governmental agency may not wish to claim the Evidence Code section 1040, subdivision (b)(2), privilege. As one appellate court has noted, claiming the Evidence Code section 1040 privilege is a mixed blessing. Successful exercise of the privilege will lead to an Evidence Code section 1042, subdivision (a), order or finding of fact adverse to the governmental agency on the issue to which the privileged information is material. (*In re Kelvin L.* (1976) 62 Cal.App.3d 823, 830 [133 Cal.Rptr. 325] (disapproved on another point in *People* v. *Memro, supra,* 38 Cal.3d at p. 686).) Thus, petitioner did not have to assert the "official information" privilege of Evidence Code section 1040 to obtain the benefit of an in camera hearing.

On the problem of construing statutes, section 1859 also provides: "[W]hen a general and particular provision are inconsistent, the latter is paramount to the former. So a particular intent will control a general one that is inconsistent with it."

Penal Code section 832.7 and Evidence Code section 1043 et seq., are clearly more specific than section 2031. Section 2031 describes the procedure for production of documents in general. Penal Code section 832.7 and Evidence Code section 1043 et seq., deal with the discovery mechanism relating to peace officer records. Accordingly, the apparent legislative intent in the statutory *Pitchess* motion provisions, that a party seeking disclosure of such records show good cause for discovery, overrides the general intent of promoting discovery as evidenced in the waiver language in section 2031, subdivision (k).

We also observe much has been written concerning the reasons for closely examining whether records of this kind should be disclosed, and the involvement of the court in that process. It is beyond dispute that routine discovery in civil actions is best done voluntarily and without burdening the

courts. However, records obtained by public agencies, often with law enforcement powers, may involve confidences of citizens never suspecting the confidence will be abused, as well as sensitive personnel opinions of a potentially defamatory character. Just as clear, therefore, is the need for court involvement in the disclosure of writings and information by and from sources having no voice in waiving the expected privacy of the information.

We conclude Green should have followed the specific *Pitchess* motion procedure to discover those documents which fell within the category of peace officer personnel records and records maintained pursuant to Penal Code section 832.5. Accordingly, he cannot be excused for his noncompliance by resorting to a waiver provision in the inapplicable and more generalized procedure which he chose to use.

Let the peremptory writ issue directing the respondent court to modify its discovery order to deny discovery of items Nos. 6, 7, 8, 9, 12, and 14 in the demand for inspection of documents and things dated November 6, 1987, without prejudice to real party seeking discovery pursuant to Evidence Code section 1043 et seq. Each party to bear their own costs.

Best, J., and Stone (W. A.), J., concurred.